703 N.W.2d 230 (2005)
PEOPLE of the State of Michigan, Plaintiff-Appellee,
v.
Tommy BROWN, Defendant-Appellant.
Docket No. 254494.
Court of Appeals of Michigan.
Submitted April 12, 2005, at Detroit.
Decided June 23, 2005, at 9:20 a.m.
Released for Publication September 2, 2005.
*233 Michael A. Cox, Attorney General, Thomas L. Casey, Solicitor General, Kym L. Worthy, Prosecuting Attorney, Timothy A. Baughman, Chief of Research, Training, and Appeals, and Lori Palmer, Assistant Prosecuting Attorney, for the people.
Gerald Ferry, Detroit, for the defendant.
Before: GRIFFIN, P.J., and BANDSTRA and HOEKSTRA, JJ.
GRIFFIN, P.J.
Defendant Tommy Brown appeals as of right his jury trial convictions of assault and battery, MCL 750.81; assault with intent to do great bodily harm less than murder, MCL 750.84; and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant to time served on the assault and battery conviction, 42 to 120 months of imprisonment on the assault with intent to do great bodily harm less than murder conviction, and a consecutive two-year term of mandatory imprisonment for the felony-firearm conviction. We affirm.

I
This case arises from a shooting incident in September 2003 at a house in Detroit that defendant shared with his girlfriend of ten years, Khimley Young. On the day in question, defendant and Young were at the house, along with Young's teenage children from a previous relationship, Porshia Johnson, Codi Johnson, and Kevin Johnson, Jr., and three of Porshia Johnson's friends, Marlin Woodfin, Tony Johnson, and Christopher Jones.
According to prosecution witnesses, defendant and Young began to argue inside the house. As a result, Porshia Johnson *234 left the front porch where she and her friends were talking and went into the residence to investigate. She returned to the porch in an agitated state and requested that her three friends follow her back inside the house. In the living room, they were confronted by defendant, who told the three young men to leave his house. Ms. Young, however, stated that they did not have to leave and that defendant's name was not on the lease. At this point, defendant retreated to the back area of the house. He soon reappeared in the living room and approached Ms. Young. He asked again if his name was on the lease, and when Young replied "no," defendant produced a handgun and shot Young in the shoulder. Next, defendant turned, pointed the gun at Porshia Johnson, and shot her in her left arm. Defendant then approached Young as she was lying on the floor, picked her up as if he was going to hug her, and shot her again in the stomach at extremely close range. Defendant then fired in the direction of Codi Johnson, wounding her in the leg. At this time, Maril Woodfin, Tony Johnson, and Christopher Jones ran from the scene. Defendant gave chase after Jones and was heard saying "I'll kill all y'all." Defendant eventually returned to the house, changed his shirt, and fled the scene. Shortly thereafter, the police arrived, and defendant was apprehended following a brief foot chase. All three victims  Young, Codi Johnson, and Porshia Johnson  were taken to the hospital and treated for their injuries; Khimley Young underwent emergency surgery for serious and permanent intestinal injuries.
Following his arrest, defendant was advised of his rights and signed the notification and waiver of rights form. During questioning, he admitted firing shots, but claimed that he was firing at the floor when Khimley Young jumped in the way. Defendant was charged with four counts of assault with intent to commit murder and one count of felony-firearm.
At trial, the prosecution presented testimony and evidence that the shootings were deliberate. Defendant, on the other hand, maintained that the shootings were accidental and prompted by fears for his own safety. In addition to the charged offenses, the trial court, at the request of the prosecution and over defendant's objection, also instructed the jury on the lesser offenses of assault with intent to do great bodily harm less than murder and misdemeanor assault and battery. The jury ultimately found defendant guilty on one count of assault with intent to do great bodily harm, one count of misdemeanor assault and battery, and felony-firearm. Defendant was acquitted on the remaining two counts charging assault with intent to commit murder. He now appeals.

II
On appeal, we address an issue of first impression: whether assault with intent to do great bodily harm less than murder is an inferior offense of assault with intent to commit murder within the meaning of MCL 768.32.
Defendant claims that the trial court committed error requiring reversal when it instructed the jury regarding the offense of assault with intent to do great bodily harm less than murder. Defendant argues, as he did before the trial court, that the instruction regarding assault with intent to do great bodily harm less than murder was improper under MCL 768.32(1) because it is a cognate offense, not a necessarily included lesser offense, of assault with intent to commit murder. We disagree.
"We review de novo a trial court's ruling on a necessarily included lesser offense instruction." People v. Walls, 265 *235 Mich.App. 642, 644, 697 N.W.2d 535 (2005), citing People v. Lowery, 258 Mich.App. 167, 173, 673 N.W.2d 107 (2003).
MCL 768.32(1) provides:
Except as provided in subsection (2), upon an indictment for an offense, consisting of different degrees, as prescribed in this chapter, the jury, or the judge in a trial without a jury, may find the accused not guilty of the offense in the degree charged in the indictment and may find the accused person guilty of a degree of that offense inferior to that charged in the indictment, or of an attempt to commit that offense.
In People v. Cornell, 466 Mich. 335, 646 N.W.2d 127 (2002), our Supreme Court clarified the law regarding instruction on inferior offenses under MCL 768.32(1). The Cornell Court noted that the statute "was not intended to be limited only to those [inferior offenses] expressly divided into `degrees,' but was intended to extend to all cases in which different grades of offenses or degrees of enormity had been recognized[,]" including misdemeanors. Id. at 353-354, 646 N.W.2d 127. The Court further explained, "[T]he word `inferior' in the statute does not refer to inferiority in the penalty associated with the offense, but, rather, to the absence of an element that distinguishes the charged offense from the lesser offense. . . .'" Id. at 354, 646 N.W.2d 127, quoting People v. Torres (On Remand), 222 Mich.App. 411, 419-420, 564 N.W.2d 149 (1997). In other words, an offense is "inferior" within the meaning of MCL 768.32(1) if "`all the elements of the lesser offense have already been alleged by charging the defendant with the greater offense.'" Cornell, supra at 354-355, 646 N.W.2d 127, quoting Torres, supra at 419-420, 564 N.W.2d 149.
Consequently, because the plain language of the statute only permits consideration of inferior offenses, the Cornell Court concluded that instructions on "cognate" lesser offenses, which contain one element or some elements not found in the greater offense,[1] are no longer permitted under MCL 768.32(1). Cornell, supra at 355, 646 N.W.2d 127. Instead, the jury may only be instructed on necessarily included lesser offenses,[2] provided "the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." Id. at 357, 646 N.W.2d 127. See also Walls, supra.
Thus, to determine whether assault with intent to do great bodily harm less than murder is an inferior offense to assault with intent to commit murder, the elements of each offense must be compared. Both assault with intent to commit murder and assault with intent to do great bodily harm less than murder are specific intent crimes. See People v. Eggleston, *236 149 Mich.App. 665, 668, 386 N.W.2d 637 (1986); People v. Mack, 112 Mich.App. 605, 611, 317 N.W.2d 190 (1981); People v. Bailey, 104 Mich.App. 146, 155, 304 N.W.2d 507 (1981). However, the requisite specific intents for these two offenses differ.
The elements of assault with intent to do great bodily harm less than murder[3] are: "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." People v. Parcha, 227 Mich.App. 236, 239, 575 N.W.2d 316 (1997) (emphasis added). See also People v. Lugo, 214 Mich.App. 699, 710, 542 N.W.2d 921 (1995); People v. Harrington, 194 Mich.App. 424, 428, 487 N.W.2d 479 (1992). This Court has defined the intent to do great bodily harm as "an intent to do serious injury of an aggravated nature." People v. Mitchell, 149 Mich.App. 36, 39, 385 N.W.2d 717 (1986), citing People v. Ochotski, 115 Mich. 601, 608, 73 N.W. 889 (1898). See also People v. Smith, 217 Mich. 669, 673, 187 N.W. 304 (1922); People v. Troy, 96 Mich. 530, 537, 56 N.W. 102 (1893).
The elements of assault with intent to commit murder[4] are: "`(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder.'" People v. Davis, 216 Mich.App. 47, 53, 549 N.W.2d 1 (1996), quoting People v. Warren (After Remand), 200 Mich.App. 586, 588, 504 N.W.2d 907 (1993). See also People v. Plummer, 229 Mich.App. 293, 305, 581 N.W.2d 753 (1998); People v. Hoffman, 225 Mich.App. 103, 111, 570 N.W.2d 146 (1997).
It is readily apparent that both offenses share the common element of assault and are, therefore, of the same class and category. However, they are distinguishable from each other by the intent required of the actor at the time of the assault. Thus, categorization of either as an offense cognate to or necessarily included within the other must center on an analysis of these distinguishing intents. In this regard, our Supreme Court's decision in People v. Taylor, 422 Mich. 554, 375 N.W.2d 1 (1985), is instructive. In Taylor, the Court held that a specific intent to kill must be present in order to sustain a conviction of assault with intent to murder, in contrast to a murder conviction, which can be supported by several mental states:
We explained in People v. Aaron, 409 Mich. 672, [714-715], 722, 299 N.W.2d 304 (1980), that there are several intents which can support a murder conviction. There can be an intent to kill, an intent to inflict great bodily harm, or a wanton and willful disregard of the likelihood that the natural tendency of the actor's behavior is to cause death or great bodily harm.
However, the issue before us concerns assault with intent to murder. The prosecution correctly concedes in all three of these cases that, in order to find a defendant guilty of this crime, it is necessary to find that there was an actual intent to kill. Maher v. People, 10 Mich. 212, 217-218 (1862), Roberts v. People, 19 Mich. 401, 415-416 (1870).

*237 "This case, so far as regards the intention to kill, is not identical with that of murder. To find the defendant guilty of the whole charge, it is true, the jury must find the intent to kill under circumstances which would have made the killing murder  and it is not denied that had death ensued in the present case, it would have been murder. But the converse of the proposition does not necessarily follow; that, because the killing would have been murder, therefore there must have been an intention to kill. Murder may be and often is committed without any specific or actual intention to kill. . . . And no such specific intent is therefore necessary to be found. This difference was recognized in Maher v. People, above cited." [Id. at 567, 375 N.W.2d 1, quoting Roberts, supra at 415-416.]
See also People v. Hart, 437 Mich. 898, 465 N.W.2d 328 (1991); People v. Gjidoda, 140 Mich.App. 294, 297, 364 N.W.2d 698 (1985); Warren v. Smith, 161 F.3d 358, 361 (C.A.6, 1998).
Thus, the specific intent to do great bodily harm, otherwise described as the intent to do serious injury of an aggravated nature, Mitchell, supra, while sufficient to prove the crime of second-degree murder and assault with intent to do bodily harm less than murder, is less than the specific intent to kill necessary to sustain a conviction of assault with intent to commit murder.[5] In sum, as the United States Court of Appeals for the Sixth Circuit correctly recognized in Warren, 161 F.3d at 361:
The second element [of assault with intent to commit murder], the intent to kill, does not equate with murder. See People v. Taylor, 422 Mich. 554, 375 N.W.2d 1, 7 [(1985)]. Thus, an intent to kill for purposes of this offense may not be proven by an intent to inflict great bodily harm or a wanton and wilful disregard of the likelihood that the natural tendency of the acts will likely cause death or great bodily harm. Id.

Because the intent to do great bodily harm less than murder is, by itself, not a sufficient mens rea for the purpose of proving the offense of assault with intent to commit murder, the question remains whether this diminished mens rea is completely subsumed in the greater mens rea of intent to kill.[6]Mendoza, supra at 540-541, 664 N.W.2d 685. Utilizing the analysis set forth in Cornell and Mendoza, we conclude that it is, and, therefore, assault with intent to do great bodily harm less than murder is a necessarily included lesser offense of assault with intent to commit murder.
It defies common sense to suggest that a defendant could commit an assault with the intent to kill another person without also intentionally and knowingly inflicting great bodily harm. In other words, it is impossible to kill someone without intending to seriously injure that person in the process. Therefore, it is impossible to *238 commit the offense of assault with intent to commit murder without first committing the offense of assault with intent to do great bodily harm less than murder. Because the lesser mens rea of intent to do great bodily harm is included in the greater mens rea of intent to kill in the context of assault offenses, the elements of assault with intent to do great bodily harm less than murder are completely subsumed in the offense of assault with intent to commit murder. Mendoza, supra at 532 n. 3, 541-542, 664 N.W.2d 685; Cornell, supra.[7] The offense of assault with intent to do great bodily harm is therefore a necessarily included lesser offense of assault with intent to commit murder and, as such, is an inferior offense within the meaning of MCL 768.32(1).
Our analysis is consistent with Mendoza, supra, in which our Supreme Court held that manslaughter, both voluntary and involuntary, is a necessarily included lesser offense of murder, because the absence of malice is the only element that distinguishes manslaughter from murder. Id. at 540-541, 664 N.W.2d 685. Similarly, in this case, the lack of the actual intent to kill is the only element that differentiates assault with intent to do great bodily harm from assault with intent to commit murder. Just as the lesser mens rea of manslaughter is included in the greater mens rea of murder, here, the lesser mens rea of intent to do great bodily harm is included within the greater mens rea of the intent to kill.
We further conclude that, under these particular circumstances, in response to the prosecution's request, the trial court properly instructed the jury that, in addition to the charged offense of assault with intent to commit murder, it could also consider the offense of assault with intent to commit great bodily harm. Here, the charged offense of assault with intent to commit murder required the jury to find a disputed factual element, the actual intent to kill, that was not part of the lesser offense of assault with intent to commit great bodily harm. See Cornell, supra at 357, 646 N.W.2d 127. In addition, a rational view of the evidence in this case supports the charge of assault with intent to commit great bodily harm. Id.; Mendoza, supra at 533, 664 N.W.2d 685. Defendant admitted firing the gun, the complainants testified that defendant shot them at close range, and the injuries sustained as a result of the shooting were serious. Thus, the trial court did not err by giving the jury the requested instruction regarding assault with intent to do great bodily harm less than murder, a necessarily included lesser offense of assault with intent to commit murder, and an inferior offense within the meaning of MCL 768.32(1).

III
Defendant also argues that he was denied a fair trial because the prosecution denigrated defense counsel and improperly shifted the burden of proof by emphasizing, during its questioning of several witnesses, defense counsel's failure to establish that the shootings were perpetrated in self-defense. Again, we disagree.
Claims of prosecutorial misconduct are reviewed on a case-by-case basis. People v. McElhaney, 215 Mich.App. 269, 283, 545 N.W.2d 18 (1996). A prosecutor's remarks must be examined in context and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial to determine whether a defendant was denied a fair and impartial trial. Id.; People v. *239 Schutte, 240 Mich.App. 713, 721, 613 N.W.2d 370 (2000), abrogated in part on other grounds by Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Here, we conclude that, when considered in context, the questions and remarks at issue were not intended to either shift the burden of proof or to denigrate defense counsel and did not deny defendant his right to a fair trial.
Initially, we note that, although suggested as a possible basis for the shootings in both opening argument and during questioning by defense counsel during trial, self-defense was never expressly argued as justification for the shootings at issue. Rather, it was argued by defense counsel that the shootings, although prompted by a concern for safety, were accidental. Accordingly, we discern no prejudice to defendant arising from the prosecution's emphasis of any failure by defense counsel to establish that the shootings were done in self-defense. The prosecutor's questions did not shift to defendant the burden of proving his innocence, but properly attacked the credibility of defendant's theory that the shootings were prompted by a fear for his safety. See People v. Fields, 450 Mich. 94, 106-107, 538 N.W.2d 356 (1995). Moreover, to the extent that the questions and comments at issue might have been misinterpreted by the jury, we find that the curative instructions given by the trial court were sufficient to dispel any prejudicial effect. People v. Bahoda, 448 Mich. 261, 281, 531 N.W.2d 659 (1995). The jury was properly instructed that the prosecution solely possessed the burden of proof in this matter. In addition, the trial court emphasized to the jury that the lawyers' questions, comments, and arguments were not evidence; rather they were only a means to assist the jury in understanding the evidence and legal theories of both parties. Because the trial court provided sufficient curative instructions to the jury, we find that defendant was not denied a fair trial.
Nor was defendant denied a fair trial as a result of the prosecution's offer to adjourn the trial for fingerprinting of a shotgun found at the scene of the shooting. Defendant argues that this offer to adjourn improperly implied that the defense, should it reject the offer, had something to hide from the jury. However, we note that counsel for defendant accepted, rather than rejected, the offer to adjourn the trial for fingerprinting of the shotgun. Moreover, although the trial court refused to grant an adjournment for this purpose, it did so only after determining, on the basis of testimony offered before the jury, that the likelihood of obtaining any useful evidence from fingerprinting of the weapon was slight.
Affirmed.
BANDSTRA, J., concurred.
HOEKSTRA, J., (concurring in the result).
I concur with the result reached by the majority, but write separately because my reasons for affirming are quite different. The majority concludes that assault with intent to do great bodily harm less than murder is a necessarily included lesser offense of assault with intent to murder. Consequently, the majority holds that the trial court properly denied defendant's objection to instructing the jury on assault with intent to do great bodily harm less than murder. My analysis leads me to conclude that these offenses do not meet the definitions for either a necessarily included lesser offense or a cognate offense, but that other considerations favor instructing on assault with intent to do great bodily harm when the primary charge is *240 assault with intent to murder if a party requests it and the facts support it.
On appeal, defendant argues that the trial court erred in instructing the jury at the request of the prosecution and over objection by defense counsel on the offense of assault with intent to cause great bodily harm, as a necessarily included offense of assault with intent to murder. Specifically, defendant argues that the offense of assault with intent to cause great bodily harm is a cognate, as opposed to necessarily included lesser offense, of the offense of assault with intent to murder and that, therefore, instruction on that offense was not permissible.
In People v. Cornell, 466 Mich. 335, 357, 359, 646 N.W.2d 127 (2002), our Supreme Court held that jury instructions regarding uncharged cognate lesser offenses are not permissible, but that instructions on necessarily included lesser offenses are "proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." Thus, to resolve this issue it must first be determined whether the offense of assault with intent to cause great bodily harm is a necessarily included or cognate lesser offense of the crime of assault with intent to murder. The determination whether an offense is a lesser included offense on which instruction is permissible is a question of law that we review de novo. People v. Mendoza, 468 Mich. 527, 531, 664 N.W.2d 685 (2003).
A necessarily included lesser offense is one that must be committed as part of the greater offense, i.e., it would be impossible to commit the greater offense without first having committed the lesser because the elements of the lesser offense are completely subsumed by those of the greater. People v. Bearss, 463 Mich. 623, 627, 625 N.W.2d 10 (2001); Mendoza, supra at 532 n. 3, 664 N.W.2d 685. In contrast, a cognate lesser offense is one that shares some common elements with and is of the same class of the greater offense, but also has elements not found in the greater offense. People v. Perry, 460 Mich. 55, 61, 594 N.W.2d 477 (1999), Mendoza, supra at 532 n. 4, 664 N.W.2d 685.
With respect to the elements of the offenses at issue here, the offense of assault with intent to murder requires proof of an assault, committed with an actual intent to kill, which, if successful, would make the killing murder. People v. Lugo, 214 Mich.App. 699, 710, 542 N.W.2d 921 (1995). The crime of assault with intent to cause great bodily harm requires an assault, coupled with an intent only to inflict great bodily harm. People v. Parcha, 227 Mich.App. 236, 239, 575 N.W.2d 316 (1997). As is apparent, both offenses share the common element of assault and are, therefore, of the same class and category. However, they are distinguishable from each other by the intent required of the actor at the time of the assault. Thus, categorization of either as an offense cognate to or necessarily included within the other must center on an analysis of these distinguishing intents.
An understanding of these two intents begins with the criminal law of murder and the common law concept of malice  the mens rea required for murder  which is broadly defined to include the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural and probable consequence of such behavior is to cause death or great bodily harm. See People v. Goecke, 457 Mich. 442, 464, 579 N.W.2d 868 (1998). Mens rea is an essential element of every crime at common law, and represents "[t]he state of mind that the prosecution, to secure a conviction, must prove that a defendant *241 had when committing a crime. . . ." Black's Law Dictionary (8th ed). Thus, the concept of malice recognizes varying definitions of the state of mind required for murder, two of which are at issue here. However, central to this analysis is that, in the context of murder, the intent to kill and the intent to cause great bodily harm are merely different definitions of the same element, i.e., malice, and within that element are coequal to one another. That is, either is itself sufficient to establish malice independent of the other. Applied to the definitions of necessarily included and cognate offenses, this characteristic of the intents to kill or to cause great bodily harm makes placement of the subject offenses into the category of offenses either necessarily included or cognate, problematic.[1]
I would conclude that the offenses of assault with intent to murder and assault with intent to cause great bodily harm are not cognate to one another because both require proof of the same two elements, i.e., an assault, and malice in the form of either an intent to kill or an intent to cause great bodily harm. Thus, neither offense contains an element that is not found in the other. Perry, supra. Similarly, neither is a necessarily included lesser offense of the other because either intent is, independent of the other, sufficient to establish malice. In other words, because it is possible to commit an assault with only the express intent to kill, it cannot be said that it is impossible to commit the offense of assault with intent to murder without first having committed the offense of assault with intent to cause great bodily harm. Bearss, supra. Consequently, the answer to whether assault with intent to cause great bodily harm is either a cognate or necessarily included lesser offense of assault with intent to murder is that it is neither.
Respectfully, I disagree with the majority's finding that the intent to do great bodily harm is less than the intent to kill and, therefore, assault with intent to do great bodily harm is a necessarily included lesser offense to assault with intent to murder. Initially, I note that People v. Taylor, 422 Mich. 554, 375 N.W.2d 1 (1985), upon which the majority relies, provides no support for the contention that the intent to do great bodily harm is less than the intent to kill. Taylor recognizes that malice may be proved without establishing an intent to kill. Id. at 567, 375 N.W.2d 1. But it in no way suggests that proving malice through one of the alternative definitions of malice, i.e. an intent to inflict great bodily harm or wanton and willful disregard of the likelihood that the natural tendency of the actor's behavior is to cause death or great bodily harm, is lesser proof of malice. Recognizing the *242 distinctive ways to prove malice, as Taylor does, does not equate to categorizing any one of them as greater or lesser to the others.
Respectfully, I also disagree with the majority's reliance on the proposition that "[i]t defies common sense to suggest that a defendant could commit an assault with the intent to kill another person without also intentionally and knowingly inflicting great bodily harm." Ante at 237. Admittedly, the doing of an act that will kill another requires that before death results a serious injury must be inflicted on the intended victim. But the law distinguishes between criminal acts and the intent with which the acts are done. For the purpose of categorizing these offenses, the act is not relevant. It is the intent or state of mind of the actor that distinguishes the two offenses. Clearly, there is a difference that the law recognizes between intending to kill and intending to inflict great bodily harm. The problem here is that for the purpose of establishing malice the law says that either, independent of the other, is sufficient. Thus, in the context of murder in which these intents are known in the law, one is not lesser to the other.
Finally, I respectfully find unavailing the comparison offered by the majority of the offenses at issue here with that of murder and manslaughter, as discussed by the Supreme Court in Mendoza. Indeed, the comparison assumes the point that I dispute, i.e., that the intent to inflict great bodily harm is lesser than that of the intent to kill. Moreover, murder and manslaughter are distinguishable from the instant offense because unlike murder the element of malice need not be proven to establish manslaughter. The absence of an element is not comparable to the issue presented here regarding whether one otherwise coequal assaultive intent is necessarily included or cognate to the other.
But, my conclusion that these offenses do not satisfy either the definition of being a necessarily included lesser offense or a cognate offense does not answer the ultimate question at issue here  whether it was error for the trial court to instruct the jury that, in addition to the charged offense of assault with intent to murder, it could also consider the offense of assault with intent to cause great bodily harm. Because these two offenses are not subject to the necessarily included lesser or cognate offense analysis, resolution requires addressing the issue in the context of the peculiar relationship these offenses bear to each other. In this context, I would hold that, because the subject offenses merely codify within the law of assault criminally culpable intents that, although punished differently as assaults depending on which of the intents is involved, are otherwise coequal under the common law of malice, a trial court must instruct on the offense of assault with intent to cause great bodily harm when the principal charge is assault with intent to murder, if the instruction is supported by a rational view of the evidence and has been requested by a party.[2] Under such circumstances, I discern no reason to deprive either party of an instruction on assault with intent to do great bodily harm less than murder. Indeed, inasmuch as the offenses at issue here are substantively the same because of their coequal intents, this holding would not be adverse to Cornell, supra, which applies *243 only to instructions on offenses "inferior" to the primary charge. Id. at 341, 646 N.W.2d 127. Consequently, I agree with the majority that the trial court's instruction on the offense of assault with intent to cause great bodily harm was proper.
NOTES
[1] "Cognate offenses share several elements, and are of the same class or category as the greater offense, but the cognate lesser offense has some elements not found in the greater offense." People v. Mendoza, 468 Mich. 527, 532 n. 4, 664 N.W.2d 685 (2003). See also People v. Bearss, 463 Mich. 623, 627, 625 N.W.2d 10 (2001); People v. Perry, 460 Mich. 55, 61, 594 N.W.2d 477 (1999).
[2] "Necessarily included lesser offenses are offenses in which the elements of the lesser offense are completely subsumed in the greater offense." Mendoza, supra at 532 n. 3, 664 N.W.2d 685 (emphasis added). In other words, a necessarily included lesser offense is a crime for which it is impossible to commit the greater offense without first having committed the lesser, Cornell, supra at 356, 646 N.W.2d 127 (citation deleted), Bearss, supra at 627, 625 N.W.2d 10, and "if a lesser offense is a necessarily included offense, the evidence at trial will always support the lesser offense if it supports the greater." People v. Alter, 255 Mich.App. 194, 199, 659 N.W.2d 667 (2003).
[3] MCL 750.84 provides:

Any person who shall assault another with intent to do great bodily harm, less than the crime of murder, shall be guilty of a felony punishable by imprisonment in the state prison not more than 10 years, or by fine of not more than 5,000 dollars.
[4] MCL 750.83 provides:

Any person who shall assault another with intent to commit the crime of murder, shall be guilty of a felony, punishable by imprisonment in the state prison for life or any number of years.
[5] "[O]ne may, of course, draw reasonable inferences to assist in making the finding of an actual intention to kill." Taylor, supra at 568, 375 N.W.2d 1. See also People v Warren (After Remand), supra at 588, 504 N.W.2d 907. The requisite intent may be gleaned from "`the nature of the defendant's acts constituting the assault; the temper or disposition of mind with which they were apparently performed, whether the instrument and means used were naturally adapted to produce death, his conduct and declarations prior to, at the time, and after the assault, and all other circumstances calculated to throw light upon the intention with which the assault was made.'" Taylor, supra at 568, 375 N.W.2d 1, quoting Roberts, supra at 416.
[6] As we have previously concluded, both offenses at issue share the remaining common element of an assault.
[7] The converse is not true: a defendant can engage in an assault with the intent to cause great bodily injury without possessing the specific intent to kill.
[1] Indeed, previous panels of this Court have, in unpublished opinions, split on the question whether the offense of assault with intent to cause great bodily harm is a cognate or necessarily included lesser offense of assault with intent to murder. See People v. Paletis, unpublished opinion per curiam, 2004 WL 2050543 issued September 14, 2004 (Docket No. 253494) (finding assault with intent to cause great bodily harm less than murder to be a necessarily lesser included, as opposed to cognate, offense of assault with intent to murder), and People v. Norwood, unpublished opinion per curiam, 2001 WL 703961 issued March 20, 2001 (Docket No. 218207) (declaring assault with intent to cause great bodily harm less than murder to be a cognate lesser offense of assault with intent to murder). The problems arising from the differing degrees of malice associated with the subject offenses, when attempting to categorize those offenses as either necessarily included or cognate, were also recently recognized by Justice Cavanagh, who, in his concurring opinion in Mendoza, supra at 552-553, 664 N.W.2d 685, found any such categorization to be "troubling."
[2] In reaching this conclusion, I recognize that the rationale employed here could logically be interpreted to require instruction on the offense of assault with intent to murder where assault with intent to do great bodily harm is the principal offense. However, that issue is not presented here and, therefore, I do not reach the question whether such an instruction could be proper.