*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JOSEPH DUKES,

Defendant-Appellant.

UNPUBLISHED
September 3, 2019

No. 342258
Wayne Circuit Court
LC No. 17-003826-01-FH

Before: BECKERING, P.J., and SAWYER and CAMERON, JJ.

PER CURIAM.

Defendant, Joseph Dukes, appeals as of right his jury trial conviction for assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, arising from his role in the beating of Jabankie Norful.[1] The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to 12 to 20 years of imprisonment. Because defendant raises no issues warranting relief, we affirm.

## I. RELEVANT FACTS AND PROCEDURE

Defendant and Norful grew up in the same neighborhood of Detroit and had known each other for over 15 years, but the two drifted apart as adults. However, in January 2017, defendant called Norful and asked to get together. Defendant picked up Norful from his apartment; defendant had another person in his car. The three men eventually ended up at a house in Detroit. Three other men were present at this house; defendant knew these men, but Norful did not. Some of the men were "smoking weed, [and] popping pills," and most of the men, including Norful, were drinking alcohol.

After a couple of hours, Norful stood up, walked toward the front door, and asked defendant to take him home. As Norful stepped out the front door, defendant said "no, Bank, I

---

[1] The jury acquitted defendant of the charge of unarmed robbery, MCL 750.530.

can't let you get away like that," and hit him on the side of the head with a thick glass bottle. The bottle did not break, but it struck Norful with such force that it knocked him out the front door and onto the porch steps. Norful recalled getting hit twice in the head with the bottle. The rest of the men in the house came after Norful and started beating him. Norful was stomped, punched, and kicked in the face during the beating. In an attempt to get away from the men, Norful crossed the street, but they followed him and continued to hit and kick him. One man pulled Norful's pea coat over his head and pushed him to the ground, where the group continued to assault him from above. The men stripped Norful of all of his clothing but for his socks. They also took his cell phone, hat, glasses, and wallet.

At some point, some or all of the men got into defendant's truck to leave. Delirious, Norful attempted to grab the handle of the truck, and the truck dragged him about two houses down the road, where Norful passed out. Police officers dispatched to the scene found Norful naked and unconscious on the curb. He was initially mistaken for dead, based on his bloodied and disfigured appearance. Norful was taken to Beaumont Hospital where he was treated for two traumatic brain injuries, a nose broken in three places, missing teeth, injury to his ribs, and damage to his knees from being dragged. In total, Norful had nine surgeries, had his jaw wired shut for four weeks, required stitches and staples in his head, and underwent intensive physical therapy. At the time of trial approximately 10 months after the incident, Norful testified that he was unable to stand for more than 20 minutes at a time without assistance, and he continued to suffer from significant memory problems. As noted above, the jury found defendant guilty of AWIGBH for his role in the assault.

## II. MRE 404(b)

Defendant first argues that he was denied a fair trial when the trial court erroneously allowed the prosecutor to introduce other-acts evidence under MRE 404(b). We disagree.

Defendant takes issue with the prosecutor's questioning of Sergeant Gayle Bowden, who at the time of the incident was a detective assigned to this case. Defendant contends that in asking Bowden about her review of other police reports in the course of her investigation of this case, it was unclear whether the prosecutor was attempting to link defendant to other crimes or to link Norful to a reported robbery at defendant's sister's house in order to establish that defendant had a retaliatory motive for the beating of Norful. Either way, defendant contends that the evidence was inadmissible and unduly prejudicial. The prosecution explains on appeal that the line of questioning was indeed pursued—but stymied by defense counsel's objections—in an effort to link Norful to a prior break-in at defendant's sister's house in order to establish defendant's motive.

The record reveals the prosecutor's multiple efforts to elicit information from Bowden about the course of her investigation and about her discovery of a police report of a prior break-in. However, due to defense counsel's many objections, the most the prosecutor was able to elicit was that Bowden learned of a report of prior break-in in the block where defendant's sister, Wanda Dukes, lived. The prosecutor was unable to successfully elicit evidence linking the reported break-in to Norful, defendant, Wanda Duke's actual house, or the charged offense, before giving up her efforts.

Generally, issues must be raised before and considered by the trial court to be preserved for appellate review. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). However, "[a]n objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground." *People v Asevedo*, 217 Mich App 393, 398; 551 NW2d 478 (1996). Defendant objected to multiple questions asked of Bowden based on hearsay and relevancy grounds, but he did not object on MRE 404(b) grounds. Therefore, this issue is unpreserved. See *id*. Unpreserved claims of error are reviewed for plain error affecting substantial rights. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Plain error affects substantial rights when it alters the outcome of the trial court proceedings. *Id*. Reversal is appropriate when an error is so serious it results in the conviction of an innocent defendant or when it "affects the fairness, integrity, or public reputation of judicial proceedings, independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted).

Defendant contends that the trial court abused its discretion in finding that the other-acts evidence offered in this case was admissible to show a common plan or scheme, that the purported connection suggested in this case was untrue or superficial at best, and that the court's ruling was "unreasonable and unprincipled." However, the trial court did not make any rulings based on MRE 404(b). Moreover, the only evidence the prosecutor actually elicited at trial was that there had once been a break-in in the area where defendant's sister lived. That's it. Other-acts evidence "must be relevant to an issue other than propensity under Rule 404(b), to protect against the introduction of extrinsic act evidence when that evidence is offered *solely* to prove character. Stated otherwise, the prosecutor must offer the other acts evidence under something other than a character to conduct theory." *People v VanderVliet*, 444 Mich 52, 74; 508 NW2d 114 (1993) (quotation marks and citation omitted). In this case, the record evidence in no way attacked defendant's character or indicated that defendant, or anyone else, had a propensity to act in a certain way. Thus, defendant has failed to establish that the evidence was admitted in error under MRE 404(b) or was unduly prejudicial. Even if evidence linking Norful to a prior break-in at defendant's sister's house had successfully been admitted at trial, such evidence would tend to show defendant's motive for the charged offenses, which is admissible other-acts evidence under MRE 404(b).[2] Defendant has failed to show any plain error and is not entitled to relief.

### III. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that there was insufficient evidence presented at trial to sustain his conviction of AWIGBH. We disagree.

This Court reviews de novo a defendant's challenge to the sufficiency of the evidence. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011).

---

[2] In her closing argument, the prosecutor referred to the break-in evidence in an effort to suggest a retaliatory motive. Defense counsel argued that the prosecution had every chance to bring in witnesses to establish the suggested motive but did not do so, and thus, "it must not have matched up with" the prosecutor's version of what she wanted to present.

> [W]hen determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. [*People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992).]

Circumstantial evidence, including reasonable inferences arising from the evidence, is sufficient proof of the elements of a crime. *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

To prove a defendant guilty of AWIGBH, the prosecution must present "proof of (1) an attempt or threat with force of violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Parcha*, 227 Mich App 236, 239; 575 NW2d 316 (1997). The intent to do great bodily harm less than murder is "an intent to do serious injury of an aggravated nature." *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005) (quotation marks and citation omitted). Because intent is difficult to prove, "only minimal circumstantial evidence" is necessary to show that defendant had the requisite intent. *People v Harverson*, 291 Mich App 171, 178; 804 NW2d 757 (2010). Intent to cause serious harm can be inferred from the defendant's actions. See *Parcha*, 227 Mich App at 239. Finally, while actual injury is not an element of the crime, "injuries suffered by the victim may also be indicative of a defendant's intent." *People v Stevens*, 306 Mich App 620, 629; 858 NW2d 98 (2014).

At trial, defense counsel's strategy was to maintain that even if defendant participated in the assault, the evidence only supported a conviction against him of felonious assault or assault and battery, not AWIGBH. On appeal, defendant argues that at some point, the assault appeared to end and it was clear defendant stopped participating and was leaving the scene, so he should not be held accountable for the injuries that followed.

The record evidence supports defendant's conviction of AWIGBH. Norful testified that defendant struck him in the side of the head with a thick wine bottle, he was struck twice by the bottle, and the first blow was so hard that it physically knocked him out of the house. At the same time defendant initiated the attack, he remarked that he could not let Norful "get away like that," and defendant's cohorts began in concert to attack Norful. Norful testified to receiving two traumatic brain injuries, stitches and staples in his head, and being left with ongoing significant memory loss, among other serious injuries. See *Stevens*, 306 Mich App at 629. Norful's medical records were admitted into evidence and they corroborated his testimony regarding the extent of his injuries from the attack. See *id*. Even if defendant is correct that only the blows to the head are relevant with respect to defendant's conduct, when viewed in the light most favorable to the prosecution, a reasonable jury could find that defendant attempted to assault Norful and cause serious injury of an aggravated nature. See *Brown*, 267 Mich App at 147. Moreover, contrary to defendant's contention, it is not clear that defendant abandoned the assault. The circumstantial evidence supports a finding that defendant and his cohorts acted in concert, and the beating by all of the assailants was exceptionally severe, entailing repeated stomping, kicking, and punching. Further, Norful testified that in his delirium after being

-4-

severely beaten, disrobed, and robbed, he grabbed the door handle of defendant's car as it attempted to leave the scene. Although Norful could not be sure who was driving, it was the same car defendant drove to the scene. The car, containing Norful's assailants, dragged Norful some distance down the road before he passed out in the street and was left for dead. Defendant's contention that he abandoned the assault does not negate more than sufficient evidence of his intent to cause Norful great bodily harm.

Viewed in the light most favorable to the prosecution, the record evidence supports defendant's conviction for AWIGBH, and defendant is not entitled to relief on this issue.

## IV. OFFENSE VARIABLES

Defendant argues that he is entitled to resentencing because the trial court erred when it assessed Offense Variable (OV) 3 and OV 7. We disagree.

When a sentencing guidelines scoring issue is preserved, as is the case here, the trial court's factual determinations "are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring condition prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

OV 3 addresses the physical injury to a victim. The trial court must assess 25 points if "[l]ife threatening or permanent incapacitating injury occurred to a victim." MCL 777.33(c). The trial court must assess 10 points if "[b]odily injury requiring medical treatment occurred to a victim." MCL 777.33(d). Defendant argues that Norful suffered neither life threatening nor permanently incapacitating injuries, so the trial court erred when it assessed 25 points for OV 3.

A preponderance of the record evidence supports a finding that Norful's injuries were both life threatening and permanently incapacitating. When officers found Norful, he was so severely beaten and bloodied that the police initially believed he was dead. He suffered two traumatic brain injuries, underwent nine surgeries, had his jaw wired shut for weeks, needed stitches and staples in his head, attended intensive physical therapy and had to relearn how to walk, and was re-hospitalized for pneumonia. His testimony and his medical records document injuries that are life threatening. Moreover, Norful testified that as of the time of trial, he remained physically compromised such that he was unable to stand on his own for more than 20 minutes at a time, and he still suffered from significant memory problems. There was no evidence suggesting that Norful would ever fully recover from the effects of his traumatic brain injuries. The trial court did not err in assessing 25 points for OV 3.

OV 7 addresses aggravated physical abuse. The trial court must assess 50 points if a "victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense," and must assess zero points if there was no such conduct. MCL 777.37(1). To assess this factor, "all relevant evidence should be closely examined to determine whether the defendant engaged in conduct beyond the minimum necessary to commit the crime, and whether it is more probable than not that such conduct was intended to make the victim's fear or anxiety increase by a

considerable amount." *People v Hardy*, 494 Mich at 443. Defendant argues that he did not increase the victim's fear or anxiety while committing the assault, so the trial court erred when it assessed 50 points for OV 7.

The record evidence shows that Norful suffered a prolonged and severe beating by multiple men, requiring multiple surgeries, a lengthy hospital stay, and resulting in lasting injuries. As discussed earlier, defendant's initial attack with a thick glass bottle is sufficient evidence to sustain a conviction for AWIGBH. The continued beating was not necessary to commit the crime. Further, as the trial court noted, defendant is liable under an aiding and abetting theory for the actions of his cohorts during the offense, and the beating was excessively brutal. It included several men simultaneously punching, stomping, and kicking Norful in the body and face to the point that they left him with two traumatic brain injuries, a nose broken in three places, knocked out teeth, damaged ribs, and drag injuries to his knees. Moreover, as the trial court also pointed out, the assailants stripped Norful of his clothing. Not only would this be intentionally humiliating, it would support a finding that defendant and his cohorts intended to substantially increase Norful's fear and anxiety by brutally beating him to the point of delirium and physical incapacity and then leaving him naked outside in the middle of winter, where he could die of hypothermia. The trial court did not err when it assessed 50 points for OV 7.

## V. STANDARD 4 BRIEF

Defendant also filed a Standard 4 brief,[3] arguing that the prosecution introduced irrelevant, prejudicial, propensity evidence and that defense counsel's failure to object to this evidence constituted ineffective assistance of counsel. We disagree.

Defendant first argues that the trial court improperly admitted irrelevant and prejudicial evidence via five witnesses because they testified about matters unrelated to what occurred at the crime scene. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. MRE 402 prohibits the introduction of irrelevant evidence. Further, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

Beyond a general assertion that the testimony of five witnesses was irrelevant and prejudical, defendant has failed to identify what particular testimony was either irrelevant or prejudicial. It is well settled that an "appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Further, review of the record reveals that the witnesses at issue

---

[3] Defendants' supplemental brief was filed pursuant to Michigan Supreme Court Administrative Order No. 2004-6, Standard 4.

testified to information relevant to the course of the investigation leading to the discovery of defendant as the assailant and tending to establish his guilt.

Defendant also argues that the trial court erred when it improperly admitted alleged other-acts evidence for which the prosecutor failed to provide a proper purpose under MRE 404(b) and which led to defendant being convicted based on impermissible propensity evidence. Again, defendant gives no details about the alleged other acts to which he is referring. Further, none of the prosecution's witnesses testified about other acts committed by defendant: each witness testified about events related to the charged assault, except the brief testimony regarding an alleged break-in, and no testimony implicated defendant in that alleged crime. Because none of the witnesses testified about other acts committed by defendant, none of these witnesses presented evidence that could possibly bear on defendant's character or his propensity to act in a criminal manner. Accordingly, the evidence was not prohibited by MRE 404(b).

Finally, defendant argues that his counsel was ineffective for failing to object to the above-alleged errors at trial. Both the Michigan and the United States Constitutions guarantee defendants the effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. To obtain a new trial, a defendant must show that (1) trial counsels' performance fell below an objective standard of reasonableness, and that (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would be different. *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 303; 521 NW2d 797 (1994). However, defense counsel "is not ineffective for failing to make a futile objection." *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004). Here, defendant has failed to establish errors in the admission of evidence that warranted an objection, and thus, he is not entitled to relief.

Affirmed.

/s/ Jane M. Beckering
/s/ David H. Sawyer
/s/ Thomas C. Cameron