*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
September 10, 2020

v

No. 344253
Dickinson Circuit Court
LC No. 17-005436-FC

JOSEPH CHARLES FOX,

Defendant-Appellant.

Before: MARKEY, P.J., and K. F. KELLY and TUKEL, JJ.

PER CURIAM.

Defendant was convicted by a jury of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84(1)(a), and was sentenced as a fourth-offense habitual offender, MCL 769.12, to serve 8 to 20 years in prison. Defendant appeals by right. We affirm.

## I. BACKGROUND

Defendant was in a relationship with Lisa Hicks on and off for several years.[1] Lisa testified that during their relationship defendant was jealous, angry, and controlling of her, and that she experienced several incidents of domestic violence, but never pursued charges against him. On July 24, 2017, Lisa arrived home from work approximately 15 minutes late after driving her sister, Laura Platt, to a store. Lisa testified that defendant was angry at her for being late and continued to grow more agitated when Lisa's ex-husband called. Lisa and defendant argued and defendant punched Lisa hard twice in the ribs, saying one punch was for being with Platt and the other was for her ex-husband calling. Lisa had trouble breathing after defendant punched her and defendant later apologized, saying that he had not meant to hit her that hard.

Lisa woke up in pain the next morning and went to the emergency room where she was diagnosed with a broken rib, but no internal damage. She told the treating doctor that she fell onto

---

[1] Lisa Hicks will be referred to as "Lisa" throughout this opinion because her mother, Diane Hicks, also was a witness at trial and Dianne's testimony is relevant to the issues on appeal.

a laundry basket and told another doctor the next day that she fell down stairs. At some point, Lisa went to the house of her mother, Dianne Hicks, and told her family that she fell down the stairs at a friend's house. Platt suspected Lisa was lying and pressured her to tell the truth. Lisa eventually told Platt that defendant had punched her twice, but asked her to not tell the rest of the family.

On July 29, 2017, Lisa woke up in more pain, felt dizzy and sick, and was sweating profusely. Defendant dropped her off at the emergency room. Lisa told the emergency room doctor that she had fallen down stairs, but later told a nurse that her boyfriend beat her and the medical staff called the police. Lisa was diagnosed with a lacerated spleen, which was internally bleeding into her stomach. The condition was life-threatening and Lisa had to be airlifted to another hospital for emergency surgery. Dianne was suspicious that her daughter was lying about the cause of the injury, and pressured her to tell the truth before she was taken to the other hospital. Lisa testified that she believed she was going to die and admitted that defendant caused her injury. Dianne confirmed the information and had Lisa sign a written statement saying that defendant caused her injury. Lisa briefly spoke to Officer Richard Wright of Kingsford Public Safety before she was airlifted away; she told him that defendant punched her after Officer Wright stated that he was "positive that [defendant] was involved" with Lisa's injury. Officer Wright then brought defendant into the police station for an interview. At trial, Officer Wright testified that defendant seemed overly relaxed, but several aspects of defendant's behavior raised red flags. Officer Wright arrested defendant at the conclusion of the interview, testifying that he was 100% confident that defendant was lying during the interview. Lisa received emergency surgery and survived. She submitted a written statement about the assault to police on August, 12, 2017.

As stated earlier, defendant was then tried and convicted of AWIGBH. This appeal followed.

## II. JURY INSTRUCTIONS

Defendant argues that he was denied a fair trial because the trial court erred by not giving a lesser included offense instruction for assault and battery. We disagree.

## A. STANDARD OF REVIEW

"Claims of instructional error are generally reviewed de novo by this Court, but the trial court's determination that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007), lv den 480 Mich 897. "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). "A trial court also necessarily abuses its discretion when it makes an error of law." *People v Al-Shara*, 311 Mich App 560, 566; 876 NW2d 826 (2015). Finally, this Court will not reverse a defendant's conviction on the basis of instructional error unless "it is more probable than not that the error was outcome determinative." *People v Riddle*, 467 Mich 116, 124-125; 649 NW2d 30 (2002).

B. ANALYSIS

Every criminal defendant has the right to a properly instructed jury. *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995). "When a defendant requests a jury instruction on a theory or defense that is supported by the evidence, the trial court must give the instruction." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). "[A] requested [jury] instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002). An offense is a lesser included offense if "all the elements of the lesser offense have already been alleged by charging the defendant with the greater offense." *People v Brown*, 267 Mich App 141, 146; 703 NW2d 230 (2005) (citation and quotation marks omitted). Stated differently, "[n]ecessarily included lesser offenses encompass situations in which it is *impossible* to commit the greater offense without first having committed the lesser." *People v Hendricks*, 446 Mich 435, 443; 521 NW2d 546 (1994) (citation and quotation marks omitted; emphasis added). But a trial court is not required to offer a jury instruction on cognate lesser offenses, *Cornell*, 466 Mich at 354, which "share some common elements, and are of the same class or category as the greater offense, but have some additional elements not found in the greater offense," *Hendricks*, 446 Mich at 443.[2]

Here, defendant was charged with and convicted of AWIGBH, MCL 750.84(1)(a). Assault with intent to do great bodily harm has two elements: "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *Brown*, 267 Mich App at 147 (citation and quotation marks omitted). "This Court has defined the intent to do great bodily harm as an intent to do serious injury of an aggravated nature." *Id*. (citation and quotation marks omitted).

Defendant requested that the jury also be instructed on the lesser offense of assault and battery, MCL 750.81. "An assault may be established by showing either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005). Additionally, "[b]attery has been defined as an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *Id*. (citation and quotation marks omitted).

---

[2] This Court previously held this case in abeyance, *People v Fox*, unpublished order of the Court of Appeals, entered November 25, 2019 (Docket No. 344253), pending our Supreme Court's decision in *People v Haynie*, ___ Mich ___, ___; 943 NW2d 383 (2020), regarding whether assault and battery was a lesser included offense of assault with intent to murder (AWIM), MCL 750.83. But in *Haynie* our Supreme Court chose not to address whether assault and battery is a necessarily included lesser included offense of AWIM and instead relied on the prosecution's concession in that case that assault and battery is a lesser included offense of AWIM. *Id*. The prosecution has made no such concession in this case and, therefore, we will address the issue based on the existing jurisprudence regarding jury instructions for necessarily included lesser offenses.

Assault and battery requires an assault and a battery.  But AWIGBH does not require a battery; rather it only requires an assault and an intent to do great bodily harm.  While many instances of AWIGBH may also include a battery, a battery is not actually an element of AWIGBH.  As such, any offense containing a battery, such as assault and battery, is not a necessarily included lesser offense of AWIGBH.  See *Brown*, 267 Mich App at 146; *Hendricks*, 446 Mich at 443.  Instead, AWIGBH and assault and battery are cognate offenses.  See *Hendricks*, 446 Mich at 443.  But a trial court is not required to give jury instructions for cognate offenses.  Thus, the trial court did not err by denying defendant's request for an assault and battery jury instruction.

## III.  EVIDENTIARY ISSUES

Defendant makes two evidentiary arguments on appeal: (1) that the trial court erred by admitting multiple hearsay statements into evidence; and (2) that the trial court erred when it allowed Officer Wright to testify regarding the veracity of defendant and Dianne, resulting in prejudice to defendant.  We disagree.

## A.  STANDARD OF REVIEW

When properly preserved,[3] this Court "review[s] for an abuse of discretion a trial court's decision to admit or exclude evidence," and reviews any preliminary legal questions of law de novo.  *People v Mann*, 288 Mich App 114, 117; 792 NW2d 53 (2010).  Preliminary questions of law require a court to determine "whether a rule of evidence or statute precludes admissibility of the evidence."  *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).  "[A] trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion."  *People v Cameron*, 291 Mich App 599, 608; 806 NW2d 371 (2011) (quotation marks and citation omitted).

Unpreserved issues are reviewed for plain error.  *People v Cain*, 498 Mich 108, 116; 869 NW2d 829 (2015).

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights.  The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings.  It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice.  Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse.  Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (quotation marks, citations, and brackets omitted).]

---

[3] Unless otherwise noted all issues are properly preserved.  Preservation requirements will only be addressed for issues that are unpreserved.

"A 'clear or obvious' error under the second prong is one that is not 'subject to reasonable dispute.' " *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018).

## B. LISA'S PRIOR STATEMENTS

At trial, defendant objected to several statements as inadmissible hearsay. Hearsay is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," MRE 801(c), and is generally inadmissible absent application of an exception, MRE 802. Defendant objected to Lisa's out of court statements introduced through the testimony of Dianne, Platt, and Officer Wright.

## 1. DIANNE

Defendant objects to multiple portions of Dianne's testimony. First, defendant argues that the written statement that Dianne had Lisa sign at the hospital, which stated that defendant was the source of her injury, was inadmissible. The prosecution argues that defendant waived the issue because his trial counsel approved of the trial court's decision to admit the written statement into evidence. We agree. Waiver occurs "[w]hen defense counsel clearly expresses satisfaction with a trial court's decision." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). See also *id*. at 504-505 ("The distinction . . . between counsel stating, 'I approve of the instructions,' and counsel stating, 'I have no objections,' is unavailing."). When the prosecution offered to admit the written note as an exhibit at trial the trial judge asked defense counsel if he had any objection to admission of the written statement. Defense counsel responded "No, your honor." Thus, the issue is waived.

Defendant also challenged the admissibility of Dianne's testimony that Lisa confirmed the assault after Dianne pressed her to tell the truth at the hospital. The trial court ruled that the statement was admissible under MRE 801(d)(1)(B), which permits admission of a witness's prior consistent statement if the witness testifies, is available for cross examination, and the statement is "consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." MRE 801(d)(1)(B). "A consistent statement made after the motive to fabricate arose does not fall within the parameters of the hearsay exclusion for prior consistent statements." *People v McCray*, 245 Mich App 631, 642; 630 NW2d 633 (2001) (quotation marks, brackets, and citation omitted).

Defendant argues, as he did at trial, that Lisa's motive to lie arose when Dianne confronted her in the hospital. In response, the prosecution argues that Lisa's motivation to lie did not arise until her credibility was challenged in the criminal proceedings for this case, that is, essentially, until trial. Dianne confronted Lisa in the hospital at a point up until which Lisa had consistently stated that she had been injured by falling, not by defendant assaulting her. In the hospital, Dianne accused Lisa of lying about her injuries and urged Lisa to admit that defendant had injured her. Lisa did so, and from that point forward Lisa has consistently stated that defendant caused her injuries.

If one takes the position that Lisa's statement implicating defendant is truthful, then her motive to lie arose when she first sought medical treatment, in an apparent attempt to protect defendant from any criminal liability; during that time frame, Lisa told her family and medical

personnel that she had been injured in a fall. On the other hand, if one takes the position, as does defendant, that Lisa's statement exculpating him was the truth, then her motive to lie arose later, when Dianne confronted her in the hospital. The trial court did not resolve these two alternatives. But, as it was the prosecution offering the statements into evidence, the relevant point for determining Lisa's motivation to lie was just after the incident, when she began consistently telling her family and medical personnel that she had been injured in a fall, not by defendant. The trial court's theory of admissibility fails under that theory because, simply put, there were no consistent statements implicating defendant in an assault, which *preceded* Lisa's motivation to lie. As such, the testimony was inadmissible under MRE 801(d)(1)(B). The same is true if one takes the later date as the starting point for the motivation to lie—the motivation arose at a time before Lisa's testimony, and before she had made statements inculpating defendant which were consistent with her trial testimony. Therefore, the admission of the statements as prior consistent statements was erroneous.

Nevertheless, "An error in the admission or the exclusion of evidence . . . is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice." MCR 2.613(A). The prosecution argues on appeal that the statements also were admissible as excited utterances under MRE 803(2); if the statements were otherwise admissible, then any error was necessarily harmless because admission was not inconsistent with "substantial justice."[4]

The prosecution argues that the statements were admissible as excited utterances because Lisa was suffering from the pain and fear caused by her initial injury. An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." MRE 803(2). "The rule allows hearsay testimony that would otherwise be excluded because it is perceived that a person who is still under the sway of excitement precipitated by an external startling event will not have the reflective capacity essential for fabrication so that any utterance will be spontaneous and trustworthy." *People v Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998) (citations and quotation marks omitted). "The pertinent inquiry is not whether there has been time for the declarant to fabricate a statement, but whether the declarant is so overwhelmed that she lacks the capacity to fabricate." *People v McLaughlin*, 258 Mich App 635, 659-660; 672 NW2d 860 (2003).

When Lisa spoke to Dianne in the hospital, Lisa believed it would be the last time she would see Dianne. But this realization was not caused by defendant attacking her. Rather, Lisa apparently came to this realization after doctors informed her that she had internal bleeding and a lacerated spleen. The doctors also told Lisa that her condition was serious enough that she needed

---

[4] In that regard, we note that even if not otherwise admissible, the exculpatory statements would have been placed before the jury to impeach Lisa's trial testimony accusing defendant of having assaulted her. MRE 613. Whether or not technically admissible as substantive evidence, such inconsistency surely would have allowed the jury to consider whether Lisa's contradictory statements over time rendered her an incredible witness, and thus further demonstrate that any error in the statements on the basis of MRE 801(d)(1)(B) was harmless.

to be airlifted to another hospital. Specifically, Lisa testified that she told Dianne the truth that defendant caused her injuries because "[t]he fear of almost dying made [me] finally tell the truth." Lisa then continued, testifying that "[b]asically, that's the number one thing was the fear of almost dying." Learning that one needs to be airlifted for emergency treatment to avoid dying certainly qualifies as "a startling event or condition," and a resulting spontaneous statement is thus made "while the declarant was under the stress of excitement caused by the event or condition." MRE 803(2). Indeed, Lisa's trial testimony related that at the time she was told of the gravity of her condition, she believed it might be the last time that would speak; Lisa expressly testified that this fear was the impetus for her telling Diane that defendant caused her injuries. As such, in the midst of such a startling event and the overwhelming emotions of potentially talking to Dianne for the final time, Lisa was almost certainly so emotionally overwhelmed that she lacked the capacity to fabricate. Consequently, Lisa's statement to Dianne was admissible as an excited utterance not because she was under the stress and excitement of the attack itself, but rather because of the stress and excitement of coming to terms with the fact that she was in danger of dying, and possibly talking to her mother for the last time. See *Smith*, 456 Mich at 550; *McLaughlin*, 258 Mich App at 659-660.

## 2. OFFICER WRIGHT

At trial, defense counsel objected to Officer Wright's testimony that Lisa told him that defendant punched her twice in the ribs. The trial court overruled the objection, holding that the statement was admissible under MRE 801(d)(1)(B) as a prior consistent statement. But this statement also occurred after Lisa's motive to lie about the source of her injuries arose, and thus, for the reasons stated earlier, it also was not admissible as a prior consistent statement under MRE 801(d)(1)(B).

As with Lisa's statement to Dianne, however, Lisa's statement to Officer Wright was admissible as an excited utterance. At the moment that Lisa was being loaded into a helicopter for further medical treatment, which was beyond the capability of the hospital she was in, she recounted to Officer Wright that defendant caused her injuries by twice striking her. At that time, Lisa also had just finished talking to Dianne for potentially the final time in her life. Additionally, Officer Wright described Lisa as appearing to be in pain and the entire situation as "chaotic," because medical personnel were telling him that they needed to leave as soon as possible. Thus, Lisa likely was so overwhelmed with the circumstances at the time she told Officer Wright that defendant caused her injuries that her statement was sufficiently reliable and, consequently, admissible as an excited utterance. See *Smith*, 456 Mich at 550; *McLaughlin*, 258 Mich App at 659-660.[5]

Defendant also argues that Lisa's August 12, 2017 handwritten statement to police was inadmissible hearsay. Counsel objected to the admission of Lisa's written statement, but the trial court admitted it as nonhearsay under MRE 801(d)(1)(B). As discussed earlier, any statement Lisa

---

[5] Additionally, while defense counsel objected at trial, that objection came after Officer Wright's testimony and, therefore, was untimely. See *In re Weiss*, 224 Mich App 37, 39; 568 NW2d 336 (1997) ("To be timely, an objection should be interposed between the question and the answer.").

made after her motivation to lie had come into being cannot be considered an admissible prior statement for purposes of MRE 801(d)(1)(B). Furthermore, Lisa wrote this statement after she already had recovered from her surgery, and the circumstances surrounding when she wrote this statement were not addressed at trial. As such, nothing in the record establishes that Lisa's August 12, 2017 handwritten note was an excited utterance. See *Smith*, 456 Mich at 550; *McLaughlin*, 258 Mich App at 659-660.

Similarly, Lisa's August 12, 2017 handwritten statement also was not a present sense impression under MRE 803(1). MRE 803(1) defines a present sense impression as "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter."

> Present sense impressions are presumed to be trustworthy because (1) the simultaneous event and description leave no time for reflection, (2) the likelihood for calculated misstatements is minimized, and (3) generally, the statement is made in the presence of another witness who has the opportunity to observe and verify its accuracy. [*People v Hendrickson*, 459 Mich 229, 235; 586 NW2d 906 (1998) (citations omitted).]

Furthermore, to be admissible, a present sense impression must satisfy the following three requirements: "(1) the statement must provide an explanation or description of the perceived event, (2) the declarant must personally perceive the event, and (3) the explanation or description must be 'substantially contemporaneous' with the event." *Id*. at 236 (citations omitted). Lisa wrote her August 12, 2017 note 19 days after the attack and 10 days after she met with police on August 2, 2017. As such, it was not "substantially contemporaneous" to the event. Consequently, the note was not admissible as a present sense impression. See *id*.

Finally, Lisa's note could have been admissible under MCL 768.27c(1), which allows a hearsay statement to police to be admitted into evidence in a domestic violence case if:

> (a) The statement purports to narrate, describe, or explain the infliction or threat of physical injury upon the declarant.

> (b) The action in which the evidence is offered under this section is an offense involving domestic violence.

> (c) The statement was made at or near the time of the infliction or threat of physical injury. Evidence of a statement made more than 5 years before the filing of the current action or proceeding is inadmissible under this section.

> (d) The statement was made under circumstances that would indicate the statement's trustworthiness.

> (e) The statement was made to a law enforcement officer.

Here, Lisa described the source of her injury; she alleged that it stemmed from an act of domestic violence; and Officer Wright is a law enforcement officer. But Lisa also made this statement 19 days after the incident and after she already had recovered from her surgery. The prosecution has

-8-

failed to identify any "circumstances that would indicate the statement's trustworthiness" not already addressed by prior consistent statements, excited utterances, or present sense impressions. Indeed, the circumstances surrounding Lisa's writing of the note were not even addressed at trial. Consequently, the prosecution has failed to identify any circumstance that would establish this statement's reliability. Furthermore, even if Lisa's statement was given under circumstances that would establish its trustworthiness, it was given 19 days after the attack. As such, Lisa's statement was not given "at or near" the time of the attack, and thus was inadmissible under MCL 768.27c(1).[6] But the trial court's error of admitting this evidence was harmless because the jury already had been presented with evidence of Lisa stating that defendant caused her injuries and, therefore, the admission of Lisa's August 12, 2017 note was cumulative, and almost certainly would not have affected the outcome of trial.[7] See *People v Whittaker*, 465 Mich 422, 426-427; 635 NW2d 687 (2001) (holding that preserved nonconstitutional error is harmless unless it affected the outcome of trial).

### 3. PLATT

Defendant argues that the trial court erred by admitting hearsay testimony from Platt. Platt testified that on the night of the alleged assault, Lisa seemed fidgety "and kept saying, 'I have to go. I have to go . . . . [Defendant is] gonna be mad if I don't get home.' " After Platt gave that testimony, the prosecution asked an additional question and Platt responded to it before defendant's trial counsel objected. The trial court overruled defendant's objection to the testimony, saying that defendant needed to object sooner. "To be timely, an objection should be interposed between the question and the answer." *In re Weiss*, 224 Mich App 37, 39; 568 NW2d 336 (1997). Because Platt testified to several statements made by Lisa and the prosecution asked an additional question before defense counsel objected, the trial court did not err by finding that defendant failed to make a timely objection. Further, Platt's testimony was admissible under MRE 803(3) as "[a] statement of the declarant's then existing state of mind" because it was not offered to prove that defendant was angry when Lisa returned home, but was offered to demonstrate Lisa's fear of defendant and her apprehension about returning home late. Thus, the trial court did not err by admitting this statement into evidence.

---

[6] We note that the prosecution failed to argue in its brief on appeal that Lisa's August 12, 2017 handwritten note was admissible under MCL 768.27c(1). As such, the argument is abandoned. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority.").

[7] Preserved nonconstitutional error, like the one at issue here, is only grounds for reversal if it is more probable than not that the error was outcome determinative. *People v Williams*, 483 Mich 226, 243; 769 NW2d 605 (2009); *Lukity*, 460 Mich at 495-496. An error is outcome determinative if it undermines the reliability of the verdict. *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010).

## C. IMPROPER TESTIMONY

Defendant argues that Officer Wright improperly testified about the credibility of Dianne and defendant. He additionally argues that his trial counsel was ineffective for failing to object to Officer Wright's testimony about defendant's testimony in that regard. We disagree.

### 1. OFFICER WRIGHT'S TESTIMONY ABOUT DIANNE

During trial, Officer Wright testified that he had a phone interview with Dianne on July 30, 2017, and that she told him the same thing to which she testified to at trial, essentially verbatim. We have held that "[i]t is generally improper for a witness to comment or provide an opinion on the credibility of another witness, because credibility matters are to be determined by the jury." *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007). But defense counsel did not object to admission of this statement in the trial court, so the issue is unpreserved. See *People v Gaines*, 306 Mich App 289, 306; 856 NW2d 222 (2014).

While Officer Wright's statement may have had the *effect* of bolstering Dianne's credibility because he stated that her trial testimony was the same as her pretrial statement, Officer Wright did not directly comment about her trustworthiness or credibility, as he never testified about whether he believed Dianne's testimony was truthful. Moreover, because the statement merely corroborated Dianne's trial testimony and was cumulative to that testimony, defendant has not shown that this error affected his substantial rights and more likely than not changed the outcome of his trial. See *Carines*, 460 Mich at 763-764. Thus, defendant has failed to establish that the trial court plainly erred by admitting this testimony.

### 2. OFFICER WRIGHT'S TESTIMONY ABOUT DEFENDANT

Defendant argues that the trial court erred by allowing Officer Wright to testify concerning defendant's veracity, thereby prejudicing defendant. Officer Wright testified that he told Lisa, " 'I'm pretty sure I know what happened here, and I'm positive that [defendant] was involved,' " that several of defendant's reactions during the police interview raised "a big red flag," and that at the conclusion of the interview, he "was a hundred percent confident [defendant] was lying . . . ." As stated earlier, "[i]t is generally improper for a witness to comment or provide an opinion on the credibility of another witness, because credibility matters are to be determined by the jury." *Dobek*, 274 Mich App at 71. Further, "[a] witness may not opine about the defendant's guilt or innocence in a criminal case," *People v Heft*, 299 Mich App 69, 81; 829 NW2d 266 (2012), because "the issue of an individual's guilt or innocence is a question for jury resolution," *People v Suchy*, 143 Mich App 136, 149; 371 NW2d 502 (1985).[8]

Defendant argues that Officer Wright's testimony was particularly prejudicial because his status as a police officer may have driven the jurors to give his testimony undue weight under the assumption that his training and experience gave him superior knowledge of defendant's

---

[8] "Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority." *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012) (citation omitted).

credibility. But police officers may provide lay opinions on topics within their personal knowledge and experience. *People v Oliver*, 170 Mich App 38, 50; 427 NW2d 898 (1988). See also MRE 701 (providing that lay witnesses may give opinion testimony that is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue"). This includes explaining "the steps of their investigations from their personal perceptions." *Heft*, 299 Mich App at 83. Here, Officer Wright's comments were not aimed at expressing an opinion as to defendant's guilt, but rather explained the process of his investigation and his personal observations during the interview. Additionally, Officer Wright never testified that he believed defendant was guilty of AWIGBH; rather, he testified that he believed defendant was lying to him during questioning. That testimony alone does not rise to the level of Officer Wright testifying that he believed defendant was guilty of the charged offense. Furthermore, at the conclusion of trial, the jurors were reminded that it was up to them to assess the credibility of witnesses and the weight of their testimony, including of police officers. This subsequent jury instruction presumably cured any prejudice arising from Officer Wright's testimony. See *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008) ("[J]urors are presumed to follow their instructions."). Consequently, defendant is not entitled to reversal on this basis.

Finally, defendant argues that his trial counsel was ineffective for failing to object to Officer Wright's testimony about defendant's guilt and truthfulness. But because Officer Wright's testimony was admissible, any objection would have been futile. Thus, defendant's argument that his trial counsel was ineffective for failing to object to this testimony must fail. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

## IV. CONCLUSION

For the reasons stated in this opinion, defendant's conviction is affirmed.

/s/ Jane E. Markey
/s/ Kirsten Frank Kelly
/s/ Jonathan Tukel

-11-